**MAIN STREET OUTFITTERS, INC., Plaintiff,**

v.

**FEDERATED DEPARTMENT STORES, INC., Defendant.**

**Civ. No. 4-86-927.**

United States District Court, D. Minnesota, Fourth Division.

Sept. 12, 1989.

Bruce A. Nemer, Peterson, Wicks, Nemer & Kamrath, P.A., and Morry N. Rothstein, Minneapolis, Minn., for plaintiff.

Eugene M. Warlich, Doherty, Rumble & Butler, P.A., St. Paul, Minn., and Albert E. Strasser and James D. Liles, Frost & Jacobs, Cincinnati, Ohio, for defendant.

## MEMORANDUM AND ORDER

DOTY, District Judge.

This matter is currently before the Court on various motions brought by the parties to this action, a trademark infringement suit. Since the inception of this action the identity of the parties and their ownership of the rights underlying the action have undergone changes. However, because of the nature of this Order, the initial identity of the parties will remain the same. This Order and Memorandum will address the "assignment in gross" issue inasmuch as the parties agree that the disposition of that issue will either determine the outcome of this case or so affect the rights of the parties that the outcome will be more easily determined. Thus, this Order will be limited to the motion brought by plaintiff on June 20, 1988 challenging the validity of the assignment of defendant's trademark on the basis that it was an "assignment in gross." Because the Court concludes that the assignment of the trademark to defendant was not an "assignment in gross", and for the reasons stated in this Memorandum and Order, the Court denies plaintiff's motion.

## FACTS

The facts are essentially undisputed and show that plaintiff, Main Street Outfitters,

---

Inc. is a Minnesota corporation which, at the time of the action, owned and operated eight retail stores in the greater Minneapolis–St. Paul metropolitan area and the greater Chicago, Illinois metropolitan area. Defendant, Federated Department Stores, Inc. (hereinafter FDS) is a large diversified retailer engaged in the operation of department stores, mass merchandising outlets and other retail store operations.

On or about December 1, 1983, FDS negotiated the assignment of the trademark "Main Street" from Work Wear Corporation. Work Wear had a division called Main Street Fashions that owned and used the trademark in the manufacture and sale of all-weather coats and women's coats. In 1983 the business of Main Street Fashions, Inc. had been essentially closed down. In exchange for the assignment, Federated agreed to pay Work Wear approximately $62,000, for which FDS received an assignment of the mark and everything that went with it. According to the deposition testimony, FDS received the "image" that had been created in the mark "Main Street" and the "aura" and reputation associated with that mark. As specifically set out in the agreement of assignment, FDS had transferred to it all the good will then attached to the trademark. FDS did not purchase a manufacturing business from Work Wear and it did not purchase any other assets, other than the trademark with the associated good will.

On or about October 1984, Federated Main Street, a division of FDS, opened its first store using the service mark "Main Street". FMS subsequently used the trademark "Main Street" on various items of clothing including jackets, rain wear and various items of apparel.

## DISCUSSION

The limited issue now before the Court is whether FDS acquired anything by its assignment of the trademark "Main Street". An assignment of a trademark is governed by 15 U.S.C. § 1060 which states in pertinent part:

"A registered mark ... shall be assignable with the good will of the business in which the mark is used ... assignments shall be by instruments in writing duly executed...."

In this case, a duly executed assignment was filed with the United States Patent and Trademark Office in accordance with an agreement between Work Wear Corporation, Inc. and FDS. The assignment specifically set out the facts that Work Wear Corporation "has adopted, used and is using the mark ... MAINSTREET ... and ... FEDERATED DEPARTMENT STORES, INC. ... is desirous of acquiring said mark, past common law cause of action and the registration thereof...."

The assignment goes on to state:

NOW THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, said Work Wear Corporation, Inc. does hereby assign unto the said FEDERATED DEPARTMENT STORES, INC., all rights, title and interest in and to the said mark, together with the good will of the business symbolized by the mark and past common law causes of action, and the registration thereof.

Plaintiff challenges the assignment in this case on the grounds that there was no assignment of the requisite "good will" with the trademark to comply with § 1060. Apparently plaintiff concedes that the assignment itself attempted to assign all rights of the trademark, including good will, and argues that the business conducted by FDS must be "substantially the same" as that conducted by Work Wear or be invalid as an assignment in gross. Plaintiff derives this argument from the language in the Eighth Circuit case of *Pepsico, Inc. v. The Grapette Co., Inc.*, 416 F.2d 285 (8th Cir.1969). In that case, the court, by Judge Lay said:

Inherent in the rules involving the assignment of a trademark is the recognition of protection against consumer deception. Basic to this concept is the proposition that any assignment of a trademark and its good will (with or without tangibles or intangibles assigned) requires the mark itself be used

by the assignee on a product having substantially the same characteristics.

*Id.* at 288. In that infringement case, the circuit court reversed the lower court's finding that Pepsico could not obtain injunctive relief on the ground that it was guilty of laches. Grapette's use of the laches defense would have been effective had it validly been assigned the use of the trademark "Peppy" which was found to be an infringing mark. In order to dispose of the laches defense, the court found that the assignment of the trademark "Peppy" was invalid, as it was "an assignment in gross". The court then analyzed the transfer of the mark and discussed the facts that Grapette wanted to use the "Peppy" name to describe a totally new pepper beverage rather than a cola beverage and that it

> did not intend to or exploit any "good will" from the name "Peppy" and Fox's long association and use of it with a *cola syrup*. When one considers that Grapette did not acquire any of the assets of Fox, did not acquire any formula or process by which the Fox syrup was made, (case citations) and then changed the type of beverage altogether, the assignment on its face must be considered void.

*Id.* at 290 (emphasis in original).

In this case FDS has already indicated that it intends to exploit the "good will" of the assigned trademark as it has used the mark on various articles of apparel. And, although FDS did not acquire any tangible assets from Work Wear, it did obtain intangibles by the assignment. Possibly most important, when viewed in light of the quoted language from *Pepsico*, is the fact that FDS did not apply the mark to a totally different product that might lead to public deception, but applied the mark to articles of apparel that were substantially the same as those sold by Work Wear.

Plaintiff further argues that the case at hand is analogous to *Pepsico* and derives five tests to show that the assignment should be invalidated. The tests that plaintiff suggests ought to control are: (1) same business before same business after; (2) substantially the same characteristics; (3) tangible asset transfer; (4) nothing given

up; and (5) non-use. This Court cannot agree with the rather mechanistic approach used by plaintiff. Plaintiff appears to rely primarily on *Pepsico*, but in doing so, undermines its argument. It is clear that in this circuit all of the facts must be analyzed on a case-by-case approach emphasizing whether the assignment works a deceit on the public. As stated by the court in *Pepsico:*

> The ultimate concern in all cases is the welfare of the public. A case-by-case treatment of the problem as specific facts present themselves is desirable.... Where a transferred trademark is to be used on a new and different product, any good will which the mark itself might represent cannot legally be assigned....

*Id.* at 289.

When the facts are analyzed in the light of *Pepsico*, and other relevant cases, the assignment to FDS of the Main Street trademark by Work Wear is valid. First, there was an attempt to assign all the rights, including good will attending to the trademark. *E.g. Glamorene Products Corp. v. Proctor & Gamble*, 538 F.2d 894 (1976), *Hy–Cross Hatchery, Inc. v. Osborne*, 49 C.C.P.A. 1163, 303 F.2d 947 (1962). Because FDS intended to have the good will associated with the trademark "Main Street" transferred to it, and intended to obtain that property right and use it in a business that was substantially similar to that of the assignor, and did so; and because the trademark was used on goods that were "not totally different", but were substantially similar, the test set forth in *Pepsico* has been met. There the court held:

> It seems fundamental that either the defendant did not acquire any "good will" as required by law or if it did, assuming as defendant argues the mark itself possesses "good will", by use of the mark on a totally different product, Grapette intended to deceive the public. Either ground is untenable to the validity of the assignment.

*Id.* at 416 F.2d 290.

The analysis of the facts relating to the assignment of "Main Street" to FDS sup-

ports the conclusion that it was not an "assignment in gross."

Even using the tests that plaintiff suggests leads to the conclusion that the assignment was valid. FDS conducted a business of selling apparel to the public, especially women's apparel, as had its assignor. The goods sold by FDS had substantially the same characteristics, that is: apparel, as those of the assignor. The assignor gave up all of its rights in the trademark that it had been using, the licensing back of certain aspects of the use of the trademark to the assignor further substantiates this conclusion. The one test that the plaintiff cites that is not met by the assignment is that of an accompanying tangible asset transfer. However, the tangible asset transfer test does not appear to be fully supported by case law. *Visa USA, Inc. v. Birmingham Trust Nat'l Bank*, 696 F.2d 1371 (Fed.Cir.1982, *cert. denied*, 464 U.S. 826, 104 S.Ct. 98, 78 L.Ed.2d 104 (1983)); *Money Store v. Harris Corp. Finance, Inc.*, 689 F.2d 666 (7th Cir.1982); *Glamorene Products Corp. v. Proctor & Gamble*, 538 F.2d 894 (1976). In light of all the facts surrounding the assignment this Court concludes that even if that test were applied the assignment does not work a deception on the public.

### CONCLUSION

Because the assignment of the trademark "Main Street" to FDS did not have the effect of deceiving the public, and FDS followed the statutory requirements of 15 U.S.C. § 1060, as well as court approved methods of having the trademark assigned to it, *see, e.g. Visa USA, Inc., supra*, this Court concludes that the assignment was valid, and not an "assignment in gross." Thus, plaintiff's motion to declare the assignment invalid as an "assignment in gross" is denied.