**SPECIALTY MEASUREMENTS, INC., Plaintiff,**

v.

**MEASUREMENT SYSTEMS, INC., et al., Defendants.**

**Civ. A. No. 90–3702 (JCL).**

United States District Court, D. New Jersey.

April 23, 1991.

Roy H. Wepner and Michael H. Teschner, Lerner, David, Littenberg, Krumholz & Mentlik, Westfield, N.J., for plaintiff.

Thomas M. Brown, Lenox, Socey, Wilgus, Formidoni & Casey, Lawrenceville, N.J., for defendants.

## OPINION

LIFLAND, District Judge.

Plaintiff Specialty Measurements, Inc. ("SMI" or plaintiff) moves for a preliminary injunction and for partial summary judgment. Defendant Laverne F. Wallace, a former employee of plaintiff, formed defendant Measurement Systems, Inc. ("MSI") and competes with plaintiff. Plaintiff's motions relate to its claims that defendants' use of the initials MSI violate plaintiff's trademark rights in its initials SMI and that defendants have disparaged plaintiff's products.

BACKGROUND

On September 5, 1990, plaintiff filed this action against defendants, alleging that de-

fendants violated federal and state trademark laws. Plaintiff also alleges tortious interference with advantageous business relationships, misappropriation of trade secrets and confidential information, and unfair competition.

Plaintiff is in the business of designing, developing, distributing and selling transducers. Transducers measure quantities such as force and torque and translate those measurements into usable information. For example, transducers are utilized in the pharmaceutical industry to measure the forces and pressures involved in the manufacture of tablets, and are utilized in bridges to monitor the stresses and strains placed upon load-bearing members of bridges.

In September of 1989, Wallace commenced employment with plaintiff as its Director of Engineering. On February 16, 1990, Wallace submitted his resignation to plaintiff. On February 20, 1990, plaintiff formally terminated Wallace's employment.

In March of 1990 Wallace participated in the incorporation of MSI. MSI is organized under the laws of the Commonwealth of Massachusetts. It is undisputed that plaintiff and defendants sell similar types of products and services to similar types of customers. Plaintiff alleges that Wallace chose to call his company MSI, a simple transposition of SMI, plaintiff's allegedly long-standing mark.

DISCUSSION

Plaintiff's federal law claim is brought under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[1] The Lanham Act provides for civil liability for any person who "uses in commerce any word, term, name, [or] symbol ... which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of

his or her goods, services, or commercial activities by another person, or

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities....

15 U.S.C. § 1125(a).

I. PRELIMINARY INJUNCTION

The standard in this circuit for a preliminary injunction was recently set forth in *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 191–92 (3d Cir.1990). District courts must examine four factors in ascertaining the propriety of issuing a preliminary injunction. The moving party must establish a reasonable probability of eventual success in the litigation, and that the movant will be irreparably injured *pendente lite* if relief is not granted. *Id.* Additionally, the district court should take into account the possibility of potential harm to other interested persons, as well as the public interest. *Id.* While these factors are vital in determining whether preliminary relief is appropriate, no one factor is necessarily determinative. After review of these factors and for the reasons stated below, plaintiff's motion for a preliminary injunction will be granted.

A. *Probability of Success*

In *Opticians*, the Third Circuit also analyzed the "reasonable probability of eventual success" requirement for a preliminary injunction in the context of a trademark infringement case. Plaintiff must establish a reasonable probability of an eventual showing "that (1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the

---

1. Plaintiff's state law claim is brought under N.J.S.A. § 56:4–1, which provides that "no merchant, firm or corporation shall appropriate for his or their own use a name, brand, trademark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals." *Id.* This statute is a codification of common law authority and is interpreted in the same manner in which § 43(a) of the Lanham Act is interpreted. *National Football League Properties, Inc. v. New Jersey Giants, Inc.*, 637 F.Supp. 507, 519 (D.N.J.1986). Accordingly, the following analysis applies to plaintiff's state and federal trademark infringement claims.

94

goods or services." *Id.* at 192, (*citing, Pedi–Care, Inc. v. Pedi–A–Care Nursing, Inc.,* 656 F.Supp. 449, 453 (D.N.J.1987); *Holiday Inns, Inc. v. Trump,* 617 F.Supp. 1443, 1464 (D.N.J.1985)).

Ownership of Valid and Protectable Mark

 Plaintiff asserts that it owns protectable rights in the mark SMI. In order for plaintiff to establish that it owns rights which are protected against infringement or unfair competition, plaintiff must establish that SMI is distinctive. Trademarks and trade names are inherently distinctive where they are arbitrary or suggestive. *Blumenfeld Development Corp. v. Carnival Cruise Lines, Inc.,* 669 F.Supp. 1297, 1318 (E.D.Pa.1987); *Caesar's World Inc. v. Caesar's Palace,* 490 F.Supp. 818, 822 (D.N.J.1980). *See also, Estate of Presley v. Russen,* 513 F.Supp. 1339, 1364 (D.N.J. 1981) (inherently distinctive trademarks gain protected status upon their first adoption and use). If a trademark is not inherently distinctive, it is only protectable if it has acquired secondary meaning. *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1228 (3d Cir.1978).

 Plaintiff correctly asserts that SMI is an arbitrary and fanciful combination of letters having no particular meaning, and thus constitutes a protectable mark. Defendants do not challenge this assertion, but rather argue that the mark SMI has not acquired secondary meaning. However, where a court determines that a mark is arbitrary, that mark is treated as distinctive and automatically qualifies for trademark protection. *A.J. Canfield Co. v. Honickman,* 808 F.2d 291, 297 (3d Cir. 1986). The *Canfield* Court determined that where a court holds a mark to be arbitrary, the court treats the mark as distinctive, "and it automatically qualifies for trademark protection at least in those geographic and product areas in which the senior user applies it to its goods." SMI provides extensive evidence of its utilization of the mark SMI in its business dealings throughout the country. *See,* Declaration of Gary E. Bubb, p. 6.

Defendants next assert that several other companies throughout the nation utilize, and have registered, the marks SMI or MSI. Defendants state that because plaintiff cannot establish a prior right to the trademark SMI, plaintiff cannot now claim that it has a protectable interest.

 Utilization of this type of rebuttal evidence is suspect in a trademark infringement case. The significance of third-party trademarks depends entirely upon the manner in which they are utilized in commerce. Defendants must introduce evidence that these trademarks are actually utilized by third parties and that they were well promoted or well recognized by consumers. *Chips 'n Twigs Inc. v. Chip–Chip Ltd.,* 414 F.Supp. 1003, 1017 (E.D.Pa.1976). Defendants submit only the Affidavits of Laverne F. Wallace, stating that other parties have registered and use the mark SMI. As set forth in *Smith Brothers Manufacturing Co. v. Stone Manufacturing Co.,* 476 F.2d 1004, 1005 (C.C.P.A.1973), such evidence does not affect plaintiff's mark:

We have considered the cited third-party registrations and accept them as evidence that the term "Caper" has in the past appealed to others in the clothes-merchandising field as an appropriate term to use as a mark, or part of a mark, on various items of clothing. But in the absence of any evidence showing the extent of use of any of such marks or whether any of them are now in use, they provide no basis for saying that the marks so registered have had, or may have, any effect at all on the public mind so as to have a bearing on likelihood of confusion. The purchasing public is not aware of registrations reposing in the Patent Office and though they are relevant, in themselves they have little evidentiary value on the issue before us.

Additionally, this evidence has little impact on the issue of whether plaintiff has protectable rights in the mark SMI. The record indicates that the third-party users to which defendants refer are companies which are in businesses unrelated to the business of the parties to this case. Evidence of use by other unrelated companies

of the same or similar trademark is of limited relevance. *Eclipse Assoc. Ltd. v. Data General Corp.*, 894 F.2d 1114, 1119 (9th Cir.1990); *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 661 (2d Cir.1970).

■■■ Defendants finally argue that plaintiff's failure to assert that its rights are superior to those of the alleged third-party users precludes the relief which plaintiff seeks. Plaintiff correctly observes that this argument is merely an attempt by defendants to raise a *jus tertii* defense. *Jus tertii*, or raising the rights of third parties, should not be allowed as a defense in any trademark case. *Eagle Snacks, Inc. v. Nabisco Brands, Inc.*, 625 F.Supp. 571, 578 (D.N.J.1985). *See 2 J. McCarthy, Trademarks and Unfair Competition*, § 31.39, p. 672 (2d ed.1984).

Likelihood of Confusion

■■■ Where the plaintiff and defendant deal in competing goods or services " 'the court need rarely look beyond the mark itself. In those cases the court will generally examine the registered mark ... and compare it against the challenged mark.' " *Opticians*, 920 F.2d at 195 (quoting *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir.1983)). The plaintiff need not prove actual confusion; the likelihood of confusion is all that need be shown. *Opticians*, 920 F.2d at 195; *Fotomat Corp. v. Photo Drive-Thru, Inc.*, 425 F.Supp. 693, 703 (D.N.J.1977).

■■■ Looking at the marks themselves, the likelihood of confusion between SMI and MSI is readily apparent. The marks look and sound alike. Numerous courts have held that probability of confusion exists where there is transposition of the same letters. *See e.g., Cluett, Peabody & Co. v. J.H. Bonck, Co.*, 390 F.2d 754 (C.C.P. A.1968) (confusion between T.T.M. and T.M.T.), and *Postal Instant Press v. Personalized Instant Printing–P.I.P. Corp.*, 201 U.S.P.Q. 732 (E.D.Mo.1978) (confusion between P.I.P. and I.P.P.). Next, the sounds of the letters S (pronounced "es") and M (pronounced "em") are similar. Transposing these letters increases the likelihood of confusion. Finally, the proba-

bility of confusion is heightened here because plaintiff and defendants are in the same business and compete for the same customers.

Defendants again argue that plaintiff's use of the initials SMI does not result in secondary meaning. As set forth above, whether the mark has obtained secondary meaning is irrelevant here, because SMI is an arbitrary mark.

Accordingly, plaintiff has established a probability of eventual success on the merits as to plaintiff's protectable interest in the mark, ownership of the mark, and likelihood of confusion concerning the origin of goods.

### B. *Irreparable Injury*

■■■ *Opticians* holds that a finding of irreparable injury can be based on a likelihood of confusion. *Opticians* determined that where plaintiff establishes the likelihood of confusion, the "inescapable conclusion is that there was also irreparable injury." *Id.* at 196–97, (*citing Church of Scientology International v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 41 (2d Cir.1986)) (preliminary injunction should usually issue where use of mark creates likelihood of confusion). *See also* Scaramella and Singer, *Enforcement of Unregistered Trademarks and Service Marks Under Federal and State Laws*, New Jersey Trial Lawyer, 62, 65 (Jan. 1991).

### C. *Harm to Defendants*

■■■ The court must balance the potential harm to defendants against the harm which would be suffered by plaintiff if a preliminary injunction were not granted. *Opticians*, 920 F.2d at 197. Defendants assert that they will be injured by a preliminary injunction because they will be forced to purchase new stationery and promotional items and will have to pay a graphic artist to revise their logo. These costs are outweighed by the harm presently being suffered by plaintiff, and the bond required by Fed.R.Civ.P. 65(c) will cover this potential harm to defendants.

### D. The Public Interest

 The public interest favors the issuance of a preliminary injunction. There is a public interest in the protection of a trademark and in protecting the public from confusion. *Opticians*, at 197–98.

## II. SECURITY

Fed.R.Civ.P. 65(c) provides that:

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

The court determines that security of $5,000 is sufficient to protect defendants.

## III. DISPARAGEMENT

 Plaintiff also moves for a preliminary injunction enjoining defendants from disparaging the products, services or practices of SMI. In support of this motion plaintiff submits the declaration of Alex Whitacre, a systems engineer for Zonic Corporation in Milford, Ohio. Mr. Whitacre states that Wallace told him that "SMI did not have the engineering capacity for new design load cells." Wallace denies making that statement. At this stage of the proceedings the court is unable to resolve this dispute. Accordingly, plaintiff has not established a likelihood of success on the merits of the disparagement claim and its motion for a preliminary injunction on the disparagement claim will be denied.

## IV. SUMMARY JUDGMENT

Plaintiff also moves for partial summary judgment on the trademark infringement claims. Fed.R.Civ.P. 56(c) provides that summary judgment shall be granted:

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The burden of showing that no genuine issue of material fact exists rests initially on the moving party. Once the moving party has shown that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must view the facts and inferences therefrom in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

 For the reasons set forth above plaintiff has established a likelihood that it will prevail on the trademark infringement claims. On the present record, plaintiff has also met its burden of showing that partial summary judgment on the trademark infringement claims is appropriate, since defendants have not set forth specific facts showing that there is a genuine issue for trial. However, because discovery has just commenced, the court will give defendants additional time to set forth specific facts showing that there is a genuine issue for trial. Thus, plaintiff's motion for partial summary judgment will be granted unless defendants set forth specific facts showing that there is a genuine issue for trial within 60 days after the date set forth by Magistrate Judge Hughes for the completion of discovery.