**CLARK & FREEMAN CORP. and Heartland Shoe Company, Inc., Plaintiffs,**

v.

**The HEARTLAND COMPANY LTD. and Steven Kline, Defendants.**

**No. 92 Civ. 112 (JSM).**

United States District Court, S.D. New York.

Jan. 8, 1993.

William Hibsher and Glenn B. Coleman, Teitlebaum, Hiller, Rodman, Paden & Hibsher, P.C., New York City, for plaintiffs.

Richard I. Miller, Harvey M. Burg, and Jerry Cohen, Perkins, Smith & Cohen, Boston, MA, for defendants.

## OPINION

MARTIN, District Judge:

This case involves the competing claims of two companies to the exclusive right to use the name "Heartland" in connection with their business operations. Defendants have been using the name since July of 1985 in connection with their sales of shirts, sweaters, trousers and jackets. Plaintiffs first commenced using the name "Heartland" on April 26, 1986 in connection with the sale of men's shoes and boots.

Had each of the parties continued with their original operations, plaintiffs selling men's shoes and boots and defendants selling shirts, trousers and jackets, there would have been little need for either to seek the intervention of the Court. While some evidence of confusion was introduced at trial, such confusion was limited and not sufficient to justify interfering with the parties' continued operating in their separate lines of merchandise. Recently, however, plaintiffs have decided that they wish to launch a clothing line under the "Heartland" name and, thus, this lawsuit.

Although plaintiffs began using the name "Heartland" after defendants, plaintiffs claim priority because in 1987 they obtained an assignment of the "Heartland" name from Sears, Roebuck & Co. which had used the name since 1983 in connection with the sale of women's boots. Plaintiffs[1] filed an application to register the "Heartland" mark with the U.S. Patent and Trademark Office on July 3, 1986. On November 25, 1986, the application was

---

**1.** Throughout, the term plaintiffs is used to include plaintiffs' predecessor, Southern Import Services, Inc., which actually made the applications at issue.

allowed and published in the official Gazette. Nine days later on December 4, 1986, Sears notified plaintiffs of their prior use of the "Heartland" name and threatened to bring opposition proceedings. Ultimately, Sears agreed to settle the matter by assigning the "Heartland" name to plaintiffs in exchange for $15,000. The settlement was affected on April 6, 1987, and, on July 28, 1987, plaintiffs' mark was registered by the U.S. Patent and Trademark Office.

Since plaintiffs' own use of the name "Heartland" did not commence until after defendants' use of that trademark, plaintiffs can prevail in this action only if they have succeeded to the priority rights in the trademark "Heartland" which were enjoyed by Sears. Defendants contend, however, that the assignment of the trademark from Sears to plaintiffs was an assignment in gross and, therefore, plaintiffs may not tack on the period of Sears' prior use to defeat defendants' claim of priority.

■ Generally, an assignment of a trademark and its accompanying goodwill will entitle the assignee to "step into the shoes" of the assignor, gaining whatever priority the assignor might have had in the mark. *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666 (7th Cir.1982); *G's Bottoms Up Social Club v. F.P.M. Industries, Inc.*, 574 F.Supp. 1490 220 U.S.P.Q. 874, 879 (S.D.N.Y.1983); 1 McCarthy, *Trademarks and Unfair Competition* 805 (2d ed.1984); *accord* 15 U.S.C. § 1060.[2] However, where a trademark has been assigned "in gross," i.e. without the accompanying goodwill, then the assignment is invalid, *Haymaker Sports, Inc. v. Turian*, 581 F.2d 257 (C.C.P.A.1978), and the "assignee" must instead rely upon his or her own use to establish priority. *Merry Hull & Co. v. Hi–Line Co.*, 243 F.Supp. 45 (S.D.N.Y. 1965); *see* McCarthy, *supra*, at 807.

*Marshak v. Green*, 746 F.2d 927 (2d Cir. 1984), discusses the rationale behind the assignment in gross rule: "Use of the mark by the assignee in connection with a different goodwill and different product would result in a fraud on the purchasing public who reasonably assume that the mark signifies the same thing, whether used by one person or another." *Id.* at 929; *see Money Store; PepsiCo, Inc. v. Grapette Co.*, 416 F.2d 285, 289 (8th Cir. 1969).

■ Plaintiffs claim that the assignment is valid for two reasons: (1) Because Sears immediately ceased manufacture and marketing of its "Heartland" boots, there was an *ipso facto* transfer of goodwill to plaintiffs; (2) Because plaintiffs were applying the trademark to "substantially similar" goods, they had acquired the goodwill as well as the mark.

Plaintiffs' first argument can be easily dismissed. Plaintiffs cite no case establishing the proposition that forbearance by the assignor operates to transfer goodwill *ipso facto. See Greenlon, Inc. of Cincinnati v. Greenlawn, Inc.*, 542 F.Supp. 890, 895 (S.D.Ohio 1982) (discussing cases where assignor *continued* use in order to establish converse proposition); *Hy–Cross Hatchery, Inc. v. Osbourne*, 303 F.2d 947, 950 (C.C.P.A.1962) (using forbearance only as one element in transfer of goodwill determination). Indeed, if forbearance alone were sufficient, then discussion of "consumer deception" would be irrelevant, since an assignee could use the mark for any product desired as long as the assignor halted operations. Goodwill is not such a mechanistic concept.

■ Plaintiffs' second contention presents a closer question. It is well established that "courts have upheld such assignments if they find that the assignee is producing a product or performing a service substantially similar to that of the assignor and that the customers would not be deceived or harmed." *Marshak*, 746

---

**2.** Although § 1060 applies only to registered trademarks, it parallels the common law rules of trademark assignment. *See Visa, U.S.A., Inc. v. Birmingham Trust Nat'l Bank*, 696 F.2d 1371 (Fed.Cir.1982), *cert. denied,* 464 U.S. 826, 104 S.Ct. 98, 78 L.Ed.2d 104 (1983); 1 McCarthy, *Trademarks and Unfair Competition* 793–94 (2d ed.1984). Thus, no distinction is made herein between cases discussing assignability of registered trademarks and those involving unregistered trademarks.

F.2d at 930; *see Defiance Button Mach. Co. v. C & C Metal Prod.*, 759 F.2d 1053 (2d Cir.), *cert. denied*, 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985) (same); *Stetson v. Howard D. Wolf & Assoc.*, 1991 WESTLAW .149753 (S.D.N.Y.), *aff'd*, 955 F.2d 847 (2d Cir.1992) (same).[3] This is the case even if no physical or tangible assets have been transferred. *Defiance Button*, 759 F.2d at 1059; *Hy–Cross Hatchery*, 303 F.2d at 950. The key question is whether plaintiffs produced a product "substantially similar" to that of Sears such that "the customers would not be deceived or harmed."

For these purposes, it is not dispositive that plaintiffs' footwear is of high quality. It is not merely the quality of the product, but its similarity to that produced by the assignor that determines whether goodwill has been transferred. "[A] trademark may be validly transferred without the simultaneous transfer of any tangible assets, as long as the recipient continues to produce goods of the same quality *and nature* previously associated with the mark." *Defiance Button*, 759 F.2d at 1059 (emphasis added). Plaintiffs' argument that customers cannot be harmed or deceived either because their shoes are of such high quality or because they are available for inspection prior to purchase misses the mark; by that rationale, plaintiffs could have produced the finest quality jet engines under the mark "Heartland" and claimed to have acquired Sears' goodwill in ladies boots. Substantial similarity demands more than quality.

Case law on "substantial similarity" is only moderately instructive, since the facts of each case are distinct and dispositive. *Cf. PepsiCo, Inc. v. Grapette Co.*, 416 F.2d 285 (8th Cir.1969) ("A case by case treatment of the problem as specific facts present themselves is desirable"). Many cases have involved products that were virtually identical, thus easily satisfying the "substantial similarity" test. *See, e.g., Money Store*, 689 F.2d at 678 (7th Cir.1982) (service mark; money lending services); *Glamorene Prods. Corp. v. Proctor & Gamble Co.*, 538 F.2d 894, 895 (C.C.P.A.1976) (dry cleaning detergent); *Hy–Cross Hatchery*, 303 F.2d at 950 (breeding chicks); *Bambu Sales*, 683 F.Supp. at 905–06 (cigarette paper).

Some courts have found "substantial similarity" even though the products differed in some respects. In *Main Street Outfitters v. Federated Dep't Stores*, 730 F.Supp. 289 (D.Minn.1989), "substantial similarity" was found to establish a goodwill transfer where the assignor had sold "all-weather coats and women's coats" and the assignee was using the mark on "various items of clothing including jackets, rain wear and various items of apparel." *Id.* at 290. The court found dispositive that "[assignee] conducted a business of selling apparel, especially women's apparel, as had its assignor. The goods sold by [assignee] had substantially the same characteristics, that is: apparel, as those of the assignor." *Id.* at 292.

In *Muhlens & Kropff v. Ferd Muhlens, Inc.*, 38 F.2d 287, 293 (D.N.Y.1929), the district court found assignor's and assignee's colognes to be "substantially similar" even though the assignor retained the secret formula to its cologne. But the court of appeals reversed, stating that "a majority of the court believe that assignment of the recipe is essential to give the assignee the exclusive right to a mark which denotes a product manufactured thereunder." 43 F.2d 937, 939 (2d Cir.), *cert. denied*, 282 U.S. 881, 51 S.Ct. 84, 75 L.Ed. 777 (1930).

In *Warner–Lambert Pharm. Co. v. General Foods ˙ Corp.*, 164 U.S.P.Q. ˙532 (T.T.A.B.1970), the court found that assignor's mineral-vitamin pharmaceutical was not similar enough to assignee's anti-caries

---

**3.** Goodwill may also be transferred if " 'the purchaser is able to "go on in real continuity with the past," ' " *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F.Supp. 899 (E.D.N.Y.1988), quoting *Defiance Button*, 759 F.2d at 1060, quoting in turn *Mutual Life Ins. Co. v. Menin*, 115 F.2d 975 (2d Cir.1940), *cert. denied*, 313 U.S. 578, 61

S.Ct. 1096, 85 L.Ed. 1536 (1941), or if "there is a continuity of management," *Marshak*, 746 F.2d at 930. Neither of these occurrences has been alleged by plaintiffs (defendants' attempts at refutation notwithstanding), and accordingly they are not discussed.

(tooth decay preventative) preparation in chewable tablet and capsule form to establish a transfer of goodwill.

Even minor differences can be enough to threaten customer deception. In the oft-cited *PepsiCo, Inc. v. Grapette Co.*, 416 F.2d 285 (8th Cir.1969), the court found that assignor's cola-flavored syrup and assignee's pepper-flavored syrup were sufficiently different to prevent a transfer of goodwill, and thus invalidate the assignment: "[The assignee]'s intended use of the mark is one simply to describe its new pepper beverage. The evidence is clear that [the assignee] did not intend to adopt or exploit any 'goodwill' from the [trademark] and [the assignor]'s long association and use of it with a cola syrup." *Id.* at 289–90.

The facts of record in this case support a finding of assignment in gross here. Sears sold only women's pixie boots under the mark "Heartland," while plaintiffs immediately applied it only to men's shoes, then later to men's hiking boots. The markets for the two goods are substantially distinct; it is unlikely that men buying plaintiffs' "Heartland" shoes would be considering a reputation for footwear generally that Sears built by selling women's boots. That plaintiffs was using the "Heartland" mark before the assignment is also relevant, in that it tends to show that plaintiffs sought only to gain the ability to use the name "Heartland" rather than the goodwill associated with it. *Cf. PepsiCo.* This is further supported by the fact that plaintiffs did not attempt to obtain the assignment from Sears until after Sears threatened to bring opposition proceedings to prevent plaintiffs from registering the "Heartland" trademark.

■ Since the assignment from Sears was an assignment in gross, defendants have shown priority in the use of the name "Heartland" and, therefore, plaintiffs may not enjoin defendants from using the "Heartland" name for the sale of its current line of products.

■ Assuming *arguendo* that the assignment from Sears was not an assignment in gross, injunctive relief would not be appropriate. Even where a party has a valid trademark and there is some likelihood of confusion, the issuance of an injunction barring use of the junior user's mark is not mandatory. As the Second Circuit observed in *Jim Beam Brands Co. v. Beamish & Crawford, Ltd.*, 937 F.2d 729, 737 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1169, 117 L.Ed.2d 415 (1992):

> [t]he court may, after "equitably balancing the conflicting interest of the parties involved", *McGregor–Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d [1126] at 1140 [ (2nd Cir.1979) ], ... determine that no injunctive relief would be appropriate ...

*See also Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 969 (2d Cir.1981).

■ I find that defendants adopted the use of the "Heartland" name in good faith. There is no evidence that when defendants began using the "Heartland" mark in 1985 they had any knowledge of the prior use of that mark by Sears. Plaintiffs argue that defendants did not act in good faith because defendants were aware in 1986 that the "Heartland" name had been registered as a trademark for carpets and t-shirts. While these facts may explain the reluctance of the defendants to attempt to register their name at that time, there is no evidence that defendants thought that any of the other known uses of the "Heartland" name would preclude them from using it for shirts, sweaters, trousers and jackets.

In order for the registered trademark owner, such as plaintiffs, to obtain an injunction to bar a junior user's use of a trademark on a different product, the owner must show the "likelihood that the prior owner would bridge the gap...." *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). As of the time plaintiffs commenced this action in 1992, they had not bridged the gap by distributing clothing similar to that on which defendants' mark appeared. Rather it was because they were planning to go into this area that they brought this action.

When defendants commenced using "Heartland" in 1985, plaintiffs, through their predecessor Sears, were using the name only in women's boots. At that time, there was no real likelihood that plaintiffs would bridge the gap by applying the "Heartland" label to the types of products defendants were selling. *See Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 49 (2d Cir.1978) (per curiam), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). Since then, defendants, acting in good faith, have built up substantial goodwill in the name "Heartland" as applied to clothing. It would be inequitable to allow plaintiffs to exploit defendants' substantial goodwill at this late date, simply because they are the senior user. As Judge Learned Hand stated in discussing expansion into related markets: "The owner's rights in such appendant markets are easily lost; they must be asserted early, lest they be made the means of reaping a harvest which others have sown." *Dwinell–Wright Co. v. White House Milk Co.*, 132 F.2d 822 (2d Cir.1943); *see also* McCarthy, *supra*, at §§ 24:5, 31:7. "Merely winning the race to the trademark office door does not entitle a senior user to relief in equity." *Mushroom Makers, Inc.*, 580 F.2d at 49.

■ While the above disposes of the plaintiffs' claims, defendants have made a cross-claim for an order cancelling plaintiffs' trademark registration or requiring the issuance of a registration to defendants for its clothing products. 15 U.S.C. § 1119. The Court finds that cancellation of plaintiffs' trademark would be inequitable, but that defendants are entitled to have the Patent and Trademark Office accept their application for registration as to clothing.

Although defendants' determination not to seek trademark registration in 1985 did not amount to bad faith, that delay does make it appropriate for the Court to conclude that defendants' request for equitable relief is barred by the doctrine of laches. *Construction Technology, Inc. v. Lockformer Co.*, 704 F.Supp. 1212 (S.D.N.Y.1989); *Simon Says Enters., Inc. v. Schaefer*, 214 U.S.P.Q. 436 (S.D.N.Y.

1986); *Haviland & Co. v. Johann Haviland China Corp.*, 269 F.Supp. 928, 937 (S.D.N.Y.1967). Accordingly, the Court will not order cancellation of plaintiffs' trademark registration.

■ However, because the Court finds that plaintiffs and defendants can continue in their respective businesses without substantial likelihood of confusion, defendants shall be permitted to proceed with application for registration of the "Heartland" mark for clothing, plaintiffs' registration notwithstanding. *See Massa v. Jiffy Prods. Co.*, 240 F.2d 702 (9th Cir.), *cert. denied*, 353 U.S. 947, 77 S.Ct. 825, 1 L.Ed.2d 856 (1957); *In re Fortex Ind., Inc.*, 18 U.S.P.Q. 1224 (Comm'r PTO 1991).

For the foregoing reasons, plaintiffs' and defendants' applications for injunctions are denied, and the complaint and counterclaims are dismissed, except as to the request for an order allowing defendants' application for registration to proceed.

Defendant, The Heartland Company, Ltd., shall have the right to register on the Principal Register of the U.S. Patent and Trademark Office the trademarks (a) "The Heartland Company Ltd." and (b) "The Heartland Company Ltd." and mailing frank design, as applied to clothing products not including shoes; the Commissioner of Patents and Trademarks is ordered to grant said defendant such registrations, subject to publication for opposition and all other required procedures, except that plaintiffs' registration No. 1,449,814 shall be no bar to registration.

SO ORDERED.