**FINANCIAL SYSTEMS SOFTWARE, LTD.**

v.

**FINANCIAL SOFTWARE SYSTEMS, INC.**

No. CIV. A. 97–3356.

United States District Court, E.D. Pennsylvania.

Dec. 8, 1999.

---

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

Plaintiff Financial Systems Software ("Financial Systems") filed an action against defendant ("Financial Software") for violation of the Lanham Act, 15 U.S.C. § 1125(a)[1] ("the Act"); defendant filed a

---

1. The relevant portion of 15 U.S.C. § 1125(a) states in relevant part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin,

counterclaim also alleging violation of § 1125(a). Before the court are cross-motions for summary judgment on plaintiff's Complaint, and plaintiff's petition to present new evidence in support of its summary judgment motion. For the reasons stated below, plaintiff's motion to present new evidence will be granted but its motion for summary judgment will be denied, and defendant's cross-motion for summary judgment will be granted. Defendant's counterclaim will be dismissed.

## BACKGROUND

Plaintiff Financial Systems has sold a variety of software products in the securities industry under the unregistered marks[2] FINANCIAL SYSTEMS SOFTWARE and FSS since 1988 (Stip. Part II ¶¶ 6–7), but Financial Systems did not use the FSS mark in advertising from 1991/1992 to 1994. The FSS mark of Financial Systems at first consisted of nothing more than the three letters together; the mark was later changed to include occasionally the three initials aligned diagonally on a grid, but Financial Systems also continued to use just the "FSS" initials.

Financial Systems products are used for financial risk management and trading. (Stip. Part I ¶¶ 23–26.) Until 1998, these products were on floppy disks or CD's, sold off-the-shelf and installed by the customer. (Stip. Part I ¶¶ 114–120.) Financial Systems is currently expanding its product line to include software identical to that sold by defendant Financial Soft-

ware. (Pl. Supplement in Supp. of Mot. for Summ. J.) Plaintiff Financial Systems sells its products to banks, investment groups, and other financial institutions. (Pl.Br.Ex.46.)

In 1992, defendant Financial Software began using the unregistered FINANCIAL SOFTWARE SYSTEMS and FSS marks to sell risk management software in the securities industry. (Stip. Part II ¶¶ 2, 18.) Defendant's FSS mark consists of the initials "FSS" below a Bell curve, a symbol used in defendant's field. (Def. Br. at 11.) Defendant's products are used for trading, calculation of interest rates, and risk management. (Def. Br. at 9.) This software is sold to the same customers as those of Financial Systems, (Stip. Part II ¶ 25), and installed on-site. (Def. Br. at 9.) Shortly after Financial Software began using these marks, it received several telephone calls from customers who were attempting to call plaintiff Financial Systems. (Stip. Part II ¶¶ 26–29.)

In October, 1994, Financial Systems assigned its marks and goodwill to FNX Ltd., a company owned by Farid Naib, a former business partner of Financial Software's president, Gerald Thurston, Jr. (Stip. Part I. ¶¶ 22, 80–84.) In May, 1996, FNX Ltd. assigned the marks and their goodwill to Financial Systems, (Stip. Part I ¶ 102) and Financial Systems "stepped into the shoes" of FNX Ltd.[3]

Dr. Mamdouh Barakat, President of Financial Systems, first became aware of defendant's use of FINANCIAL SOFTWARE SYSTEMS and FSS in 1992/1993.

sponsorship, or approval of his or her goods, services, or commercial activities by another person, ...
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

2. The term "mark" includes the terms "trademark," "service mark," and "trade dress," unless otherwise stated.

3. A mark is usually not abandoned if the owner assigns the mark with its goodwill, see Clark & Freeman Corp., 811 F.Supp. 137, 139

(S.D.N.Y.1993); the assignee of the mark "steps into the shoes" of the assignor. See id.

Defendant asserts plaintiff abandoned its marks by selling them to Naib, who could not use them because of a non-competition agreement between himself and Thurston. Since Naib could not legally use these marks when he purchased them, defendant argues that Naib had no rights in the marks to sell to plaintiff. Whether the trademark rights purchased by Naib are inchoate until resold to plaintiff, need not be decided to resolve the motions.

(Stip. Part I ¶ 43.) In August, 1994, he sent defendant a letter requesting it to cease using the marks. (Stip. Part I ¶ 64.) In August, 1996, plaintiff began using new registered marks: "MBRM" and "Mamdouh Barakat Risk Management." (Stip. Part I ¶¶ 108–09.)

On November 18, 1996, Financial Systems, filing this action against Financial Software, alleged false representation under 15 U.S.C. § 1125(a), common law trade infringement, and violation of Ohio's trademark laws. Financial Software filed a counterclaim for violation of § 1125(a). After discovery, both parties have moved for summary judgment on Count I of the Complaint.[4]

### DISCUSSION

### I.  Standard of Review

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A defendant moving for summary judgment bears the initial burden of demonstrating there are no facts supporting the plaintiff's claim; then the plaintiff must introduce specific, affirmative evidence there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

The court must draw all justifiable inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists only when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. at 248, 106 S.Ct. 2505. The non-movant must present sufficient evidence to establish each element of its case for which it will bear the burden at trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The parties in this action, in filing cross-motions for summary judgment, concede there are no genuine issues of material fact, and the only issues are matters of law for the court to decide.

### II.  Trademark Infringement Law

■ The elements of trademark infringement are: (1) a valid and legally protectable mark; (2) ownership of the mark; and (3) likelihood of confusion concerning the origin of the goods or services when used by the other party. See Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 472 (3d Cir.1994); Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 291 (3d Cir.1991); Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 192 (3d Cir.1990).

### A.  Validity and Protectability of a Mark

■ A mark is only protected by the Lanham Act if it is "distinctive." See Specialty Measurements, Inc. v. Measurement Systems, Inc., 763 F.Supp. 91, 94 (D.N.J.1991). A mark may fall into one of four categories: arbitrary or fanciful, suggestive, descriptive, and generic. A.J. Canfield v. Honickman, 808 F.2d 291, 296 (3d Cir.1986). If the mark is arbitrary or

---

4.  Plaintiff voluntarily withdrew Count II (common law infringement) and III (infringe-    ment under Ohio law) on July 28, 1997.

suggestive, it is considered inherently distinctive and automatically protectable. *Id.* at 297; *Specialty Measurements,* 763 F.Supp. at 94. If the mark is descriptive, it is only protected if it has acquired secondary meaning. *A.J. Canfield,* 808 F.2d at 297. A generic mark is not protected. *Id.* Because the marks at issue are unregistered, the party seeking protection has the burden of proving that the mark is arbitrary, suggestive, or descriptive. *See id.*

■ A mark is considered arbitrary if it "bear[s] 'no logical or suggestive relation to the actual characteristics of the goods.' " *Id.* at 296(quoting *Keebler Co. v. Rovira Biscuit Corp.,* 624 F.2d 366, 374 n. 8 (1st Cir.1980)); a suggestive mark "suggest[s] rather than describe[s] the characteristics of the goods." *Id.*

■ A descriptive mark "describe[s] a characteristic or ingredient of the article to which it refers." *A.J. Canfield,* 808 F.2d at 296. For a descriptive mark to be protected, the owner of the mark must demonstrate that the mark has gained secondary meaning; "[s]econdary meaning exists when the trademark is interpreted by the consuming public to be not only an identification of the product, but also a representation of the product's origin." *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1228 (3d Cir.1978).

■ A generic mark is not protected because the mark is "the common descriptive name of a product class." *A.J. Canfield,* 808 F.2d at 296. The purpose of trademark protection is to protect the public from confusion and "enabl[e] the buyer to distinguish the goods of one producer from the goods of others." *Id.* at 304. Generic marks are not protected because competitors must use these words to describe the product; to hold otherwise

would stifle competition. *See id.* at 304–05.

## B. Ownership of a Mark

■ To prevail under the Act, the party must show that it owns the mark in question. The mark belongs to the party who is the first adopting and continuously using the mark. *See Ford Motor,* 930 F.2d at 297(citing *Tally–Ho Inc. v. Coast Community College Dist.,* 889 F.2d 1018, 1022–23 (11th Cir.1989)). Trademark rights are acquired "through actual prior use in commerce." *Tally–Ho, Inc.,* 889 F.2d at 1022(citing *United States v. Steffens,* 100 U.S. 82, 25 L.Ed. 550 (1879)). Because trademark rights arise only in connection with commercial activity, "actual and continuous use is required to acquire and retain a protectable interest in a mark." *Id.* at 1022–1023(footnote omitted). The party asserting ownership of the trademark must present evidence that the trademark has achieved significant market penetration; sales volume must be more than *de minimis. See Lucent Information Management, Inc. v. Lucent Technologies, Inc.,* 186 F.3d 311 (3d Cir.1999) (holding limited use of a mark did not constitute prior use in commerce sufficient to establish rights in the mark).

■ For either party to obtain trademark rights in the FSS mark, it must have used the mark as more than an abbreviation for the company's or product's name; initials as an abbreviation are merely shorthand for another name or mark rather than a separate mark with a distinct meaning. To gain protection, a party must have used the initials, like any other trademark, to show the source of its goods or services. *See A.J. Canfield,* 808 F.2d at 304.[5]

---

5. Defendant raises the issue whether plaintiff's original use of the FSS initials was to indicate source or merely as an abbreviation for "Financial Systems Software." Because this court finds that defendant presently owns the trademark rights to its FSS mark, and cannot be precluded from using its mark by plaintiff, this court need not reach the issue of Financial System's original use of the initials.

## C. Likelihood of Confusion

The court must consider the likelihood of confusion to the consuming public if there is a valid, protectable mark.[6] If parties use a mark concurrently and their goods directly compete with each other, the court will "rarely look beyond the mark itself." *A & H Sportswear Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 202 (3d Cir.1999)(quoting *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir. 1983)); *see Fisons Horticulture, Inc.*, 30 F.3d at 472. If the goods or services at issue do not directly compete in the same market, the court weighs the relevant factors discussed in *Scott Paper*, 589 F.2d at 1229:

"(1) the degree of similarity between the owner's mark and the alleged infringing mark;

(2) the strength of owner's mark;

(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

(4) the length of time the defendant has used the mark without evidence of actual confusion arising;

(5) the intent of the defendant in adopting the mark;

(6) the evidence of actual confusion;

(7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media;

(8) the extent to which the targets of the parties' sales efforts are the same;

(9) the relationship of the goods in the minds of the public because of the similarity of function; and

(10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market."

*Scott Paper Co.*, 589 F.2d at 1229.

## III. PLAINTIFF'S COMPLAINT

### A. FINANCIAL SYSTEMS SOFTWARE Mark

For a party to prove that its mark is distinctive (not generic), it must "show that the primary significance of the term in the minds of the consuming public is not the product but the producer." *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73 (1938), *adopted in* 15 U.S.C. § 1064 (1994)(applying to petitions for cancellation of trademarks). The court looks at a mark as a whole, not the individual words. *Technical Pub. Co. v. Lebhar–Friedman, Inc.*, 729 F.2d 1136, 1140 (7th Cir.1984).

Plaintiff has produced evidence it has goodwill in the mark, but that does not in itself establish primary significance. FINANCIAL SYSTEMS SOFTWARE defines a particular product genus: software pertaining to financial systems. Plaintiff's product has been defined as a "financial calculator," (Def. Br. at 3), "back room systems" (Pl. Reply Br. at 16), "pricing sheets" (Stip. Part I ¶ 23), and "small systems" (Stip. Part I ¶ 23), but these products are all financial systems software, regardless of source. *Cp. Technical Pub. Co.*, 729 F.2d at 1136 ("Software News" is a generic mark). In one of the exhibits submitted by plaintiff, the term "systems software" is used as a volume heading for "The Software Users Year Book 1991." (Pl.Br.Ex.6). By adding the adjective "financial" to its name, an adjective easily used to describe the type of "systems software," plaintiff did not make the mark less generic. Because FINANCIAL SYSTEMS SOFTWARE is generic, it is un-

---

6. Plaintiff Financial Systems argued in its brief that a "possibility of confusion" standard governs the alleged infringement because defendant is new to the United States market. (Pl. Br. at 21–22.) The Court of Appeals has since held "that the appropriate standard for determining trademark infringement under the Lanham Act is the likelihood of confusion." *A & H Sportswear Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 205 (3d Cir.1999).

protected under the Act. Plaintiff presents evidence of secondary meaning, but such evidence is irrelevant if the mark is generic. *See A.J. Canfield,* 808 F.2d at 297.

## B. FSS Mark

### 1. Validity and Protectability of the Mark

■ The FSS mark is arbitrary because it is a symbol with no particular meaning or relation to the characteristics of the goods sold. *See Specialty Measurements,* 763 F.Supp. at 94. When a consumer sees "FSS," the characteristics of the product do not immediately come to mind, nor is the nature of the goods suggested. "FSS," an arbitrary mark, is inherently distinctive and need not have secondary meaning to be protectable.

### 2. Ownership of the Mark

■ Plaintiff clearly began using the initials "FSS" first. Plaintiff began using the initials in the United States in January, 1989. (Stip. Part I ¶ 7.) The mark was used in the 1991/1992 Mitsubishi Finance Risk Directory, (Stip. Part II ¶ 34.), but was not used in a number of advertisements beginning in 1990. (Stip. Part I ¶ 16; Pl. Br. Ex. 6.) In 1991, plaintiff's advertisements ceased to include the initials; a review of plaintiff's Exhibit 6, a very extensive assortment of advertisements by Financial Systems during its existence, includes no advertisement using the initials "FSS" from 1991 to January, 1994. (Pl.Br.Ex.6.) Plaintiff has offered no examples of product labels, letterhead, or other uses proving continuous use from 1991 until 1994, a period of over two years. When plaintiff resumed use of "FSS," it sometimes used a changed mark displaying the initials diagonally on a grid.

Plaintiff ceased to use the "FSS" initials as defendant began the use of its FSS mark in June, 1992. Financial Software has continuously used its mark from June, 1992, until the present time. Because plaintiff ceased to use "FSS" for over two years, its use was not continuous. Defendant was the first to adopt and use "FSS" continuously as an integral part of its mark; defendant owns its FSS mark with the Bell curve.

### 3. Likelihood of Confusion

■ The products of both parties in this action directly compete. Parties sell to the same customers and advertise in the same magazines. (Stip. Part II ¶¶ 15–17, 25, 43–44.) In October, 1998, plaintiff introduced a new product similar to defendant's product. (Pl. Supplement in Supp. of Mot. for Summ. J. Ex. A.) Therefore, the court must determine whether there is a likelihood of confusion.

The FSS marks in this action are almost identical; they use the same three initials, "FSS." Defendant's mark shows the initials below a Bell curve. Plaintiff's mark uses the initials either without graphics or diagonally on a grid. This distinction between the graphics of the marks is not sufficiently strong to overcome the likelihood of confusion inherent in the marks.

The consuming public could very well assume that the products came from the same source because the FSS marks are almost identical. The parties are in similar channels of trade and sell to many of the same customers (Stip. Part II ¶ 25); they advertise in the same magazines. (Stip. Part II ¶¶ 15–17, 43–44.) Even if the goods may not be identical, they are used in the same industry. (Pl.Br.Exs.46–47.) Potential customers are sophisticated purchasers who would understand the differences in the products the parties supply, but these other factors outweigh this sophistication. Actual confusion has occurred, beginning in 1992: several telephone calls intended for Financial Systems were received by Financial Software. (Stip. Part II ¶¶ 26–29.) A consumer could easily conclude that the different products came from the same source.

■ Financial Systems may not use Financial Software's FSS/Bell curve mark

but may continue to use the initials "FSS" as an abbreviation for the name "Financial Systems Software" without the graphic component. Financial Software admits such a use will not cause a likelihood of confusion with its FSS/Bell curve mark.

### IV. COUNTERCLAIM

■ Defendant's counterclaim alleged Financial Systems infringed on its FINANCIAL SOFTWARE SYSTEMS and FSS mark with the Bell curve.

The FINANCIAL SOFTWARE SYSTEMS mark is also generic, as defendant admitted at oral argument. The products Financial Software sells are installed in a computer and used for trading, calculation of interest rates, and risk management; they may all be characterized as "software systems" used in the financial field. The term "software systems" is used to describe a type of product used with a computer; the adjective "financial" merely distinguishes this subset of "software systems" from that used in other fields, i.e., legal or medical software systems.

Defendant Financial Software also admitted at oral argument that its continued use of the FSS mark with the Bell curve did not preclude Financial Systems from using the initials "FSS." Since defendant admitted on the record that its counterclaim for plaintiff's trademark infringement of the marks "FINANCIAL SOFTWARE SYSTEMS" and "FSS" initials without the Bell curve is without merit and gave no valid reason for its assertion, the counterclaim will be dismissed as frivolous.

### V. PLAINTIFF'S PETITION TO PRESENT NEW EVIDENCE

Plaintiff requests leave to submit as "new evidence" a September 8, 1999 decision of the British Trademark Office ("the Office") denying Financial Software's opposition to Financial System's registration of the "FSS" mark in the United Kingdom. What Financial Systems describes as new evidence is actually supplemental legal authority involving the same parties; it

wishes to make a collateral estoppel argument with respect to the issues addressed in the decision.

Financial Systems points to those parts of the decision finding that 1) the initials "FSS" have not been used by any other party as a generic description of financial software systems or services; 2) there was no evidence of any use in the relevant trade of the letters "FSS"; 3) the price disparity between the parties' respective products was not enough to defeat a likelihood of confusion; and 4) the assignment by Financial Systems to FNX Ltd. and FNX's efforts to register the FSS mark were not taken in bad faith.

With respect to the first issue, this court finds the FINANCIAL SYSTEMS SOFTWARE mark, not the FSS mark, is generic. The Office's finding that no other party besides Financial Systems and Financial Software has used the letters "FSS" as a generic description of financial software systems or services, (Plaintiff's Petition to Present New Evidence Ex. B at ¶ 8(f)), does not contradict our finding that the defendant was the first to adopt and use FSS continuously in the United States. Plaintiff mischaracterizes the second excerpt of the Office decision it cites by quoting only part of the sentence, which reads, *"Other than by the parties to these proceedings,* there is no evidence of any use in the relevant trade of the letters FSS." (Plaintiff's Petition to Present New Evidence Ex. B at ¶ 47(emphasis added).) This section of the opinion addressed Financial Software's argument about the likelihood that other companies would use the same or a similar trademark and does not mandate a different result than reached here. The third and fourth issues may similarly be disregarded since neither necessarily contradicts this court's findings.

### CONCLUSION

The FINANCIAL SYSTEMS SOFTWARE and FINANCIAL SOFTWARE

SYSTEMS marks are generic and unprotected. Financial Software's FSS mark with the Bell curve is arbitrary and protected. A likelihood of confusion exists if both parties continue to use this "FSS" mark. Financial Systems cannot preclude Financial Software's use of "FSS" or "FSS" with a Bell curve; Financial Systems may continue to use only the "FSS" initials (without a Bell curve) as an abbreviation. Defendant's arguments regarding equitable defenses are moot.

An appropriate Order follows.

### ORDER

AND NOW, this 7th day of December, 1999, upon consideration of plaintiff's and defendant's cross-motions for summary judgment, all responses thereto, and after a hearing during which counsel for both sides were heard, and in accordance with the attached Memorandum, it is hereby **ORDERED** that:

1. Defendant's motion for summary judgment on Count I of Complaint is **GRANTED.**

2. Plaintiff's motion for summary judgment on Count I of the Complaint is **DENIED.**

3. Plaintiff's petition to present new evidence in support of its motion for summary judgment is **GRANTED.**

4. Judgment is entered in favor of defendant and against plaintiff on Count I of the Complaint.

5. Defendant's counterclaim is **DISMISSED** as frivolous.

6. Counts II and III of the Complaint having been withdrawn voluntarily, the Clerk is directed to mark this action **CLOSED.**