Belleville News-Democrat, Inc., Plaintiff-Appellee, v. St. Clair County Publishers, Inc., Defendant-Appellant.

Gen. No. 60–F–3.

Fourth District.
May 25, 1960.

Kramer and Chused, of St. Louis, Mo., and Wagner, Conner, Ferguson, Bertrand, and Baker, of Belleville, for defendant-appellant.

Baltz and Guymon, of Belleville, for appellee.

SCHEINEMAN, P. J.

This is an appeal from an order granting a permanent injunction against the defendants, owners of

a newspaper called the "St. Clair County News Advertiser," enjoining them from using the word "News" in the title of their newspaper. The suit was brought by the Belleville News-Democrat alleging that the word "News" as used in defendant's paper constituted unfair competition in that it tended to confuse and deceive the public to the detriment of plaintiff.

The following is a statement of facts not in dispute. The Belleville News-Democrat has been published and distributed daily for many years in the City of Belleville and in the County of St. Clair under that name. It is a full sized newspaper, nine columns in width, 21 inches from top to bottom, with a two inch masthead bearing the name in Old English type, "Belleville News-Democrat." It has been popularly known as and called the "News."

The Saint Clair County News Advertiser is a weekly newspaper distributed in the City of Belleville and County of St. Clair since September 18, 1958. It is a tabloid sized paper, five columns in width and shorter in depth than the Belleville News-Democrat. Its masthead is composed of the words "Saint Clair County" in block letters superimposed on a map of St. Clair County followed by the word "News" in a script type known as "Thrust" and the word "Advertiser" in a type known as "Franklin Gothic." The same wording and styling of the masthead is reproduced on defendant's letterheads, business cards, advertising layout sheets, billheads and on its station wagons.

There are more than 90 newspapers published in the State of Illinois containing the word "News" in the name on their mastheads, more than 21 in the Chicago area alone, and six newspapers in St. Clair County excluding the plaintiff's and defendant's.

The plaintiff's president admits that when the two papers are held up side by side there is no difficulty

whatsoever in distinguishing them and that there would be no likelihood of anyone buying a newspaper at a stand and mistakenly getting one paper for the other.

The Belleville News-Democrat is published daily, sold at newsstands, and distributed by carriers and cream and red trucks carrying the legend "News-Democrat, Belleville's dominant daily." Carrier bags are yellow with black letters. The St. Clair County News Advertiser is a weekly, distributed free by mail and carrier throughout the City of Belleville and St. Clair County. It is not sold at newsstands. Its carrier bags are red with no lettering and its station wagons are black and white and are identified with the masthead, address and telephone number of the St. Clair County News Advertiser. The telephone listing of the St. Clair County News Advertiser is listed alphabetically under that full name.

In considering this case, citations in the briefs have been considered. Extensive additional research has failed to uncover a single case anywhere in the United States where an attempt was made to enjoin a newspaper from using the word "News" in its title. It seems such an absurdity on its face that courts have not even been bothered with the proposition. The nearest thing to it coming to our attention is Pulitzer Pub. Co. v. Houston Printing Co., 11 Fed. 2d 834. That case involved an attempt by the St. Louis Post-Dispatch to restrain the Houston Post-Dispatch from using the words "Post-Dispatch" in its title for the reason that it constituted a trade mark infringement or unfair competition.

The court refused to issue the injunction stating that for many years the words "Post-Dispatch" were in common use throughout the English speaking world as names for newspapers, that one out of 14 papers in the United States is called "Post" or "Dispatch," that

98

the papers themselves were essentially different in type, get-up and general appearance, that though there might be some confusion in purchasing the newspapers by name at a newsstand there is no evidence that anyone bought one when he intended to buy the other, that the Houston paper did not intend to palm off its paper for the St. Louis paper, nor was deception a natural and probable result of use of such words in its title.

■ It is a general principle of law that a descriptive word cannot be pre-empted by a business for its own exclusive use unless the word has acquired a secondary meaning whereby it becomes peculiarly associated with a particular product. Max Levy & Co. v. Kartz, 250 Ill. App. 253; Elgin Butter Co. v. Elgin Creamery Co., 155 Ill. 127, 40 N. E. 616. In the latter case it was held the use of the words "Elgin," "butter," and "creamery" could not be enjoined in the absence of any artifice to mislead dealers.

■ Of course, there are cases where a generic or descriptive word has acquired a secondary meaning and is commonly associated with a particular product. In that event, the use by another of the same word may be enjoined where it is palpably intended to deceive, and to mislead the public, or some part thereof, into the belief that the second product is that of the company first using the name. Plaintiff's brief cites a number of cases of that type.

Those citations do not fit the facts in this case. The defendant's paper is so completely different in size, format and make-up that it is not possible to deceive anyone into the purchase of defendant's paper in the belief that it is a product of the plaintiff. It seems to be the fear of plaintiff that defendant's employees will solicit advertising by misrepresenting themselves and their employer. We consider this fear groundless for the practical reason that the practice of such de-

ception would be self-defeating. Intentionally or unintentionally, to misrepresent the outlet of a customer's advertising just once could have no other effect than to destroy any relationship with that customer.

The plaintiff produced testimony of three incidents it contends show that confusion has occurred and will continue from the use by defendant of the word "News." One of these involved a woman who had supplied her picture to a person whom she assumed was representing the plaintiff. The incident did not involve the St. Clair County News Advertiser, since it occurred prior to the commencement of its publication and the picture was not used in that paper. About all this testimony indicates is the general confusion of the witness over the inconsequential fact of who called for her picture.

Both of the other incidents occurred very shortly after the News Advertiser was first organized, and both involved telephone conversations with individuals who had not yet heard of the News Advertiser. Under those conditions, slight inattention on the part of the person called could lead him to assume that he was talking to a representative of the only newspaper he was thinking of at the time. In effect they were isolated instances arising out of the newness of the second paper, ignorance of its existence and inattention and indifference on the part of those solicited.

Prior to its first publication, the defendant caused letters to be sent to various parties in the area announcing its advent. The first edition carried a news item referring to the fact it was a new paper to be published weekly. It is now widely distributed, by mail, by carrier boy and by station wagon. The carriers and the vehicle have large markings so different from the plaintiff's there is no possibility of confusion. Its existence as a weekly must necessarily be a matter of common knowledge, so that it could not

be confused with the daily. Its name is listed in the telephone directory under its title of "St. Clair County News Advertiser" and is not listed under the word "News."

▮ The fact that plaintiff made no objection to the use of the word "News" in the title of half a dozen other papers in the same county, but brings suit only against one paper, has its significance. Competition is not "unfair" merely because it exists. As a federal court has said: ". . . all must submit to the competition which comes along from the fair and truthful employment of generic names and terms descriptive of the qualities and characteristics of articles of trade and commerce, unaccompanied by other acts designed to induce confusion and error in the mind of the public." Trinidad Asphalt Mfg. Co. v. Standard Paint Company, 163 Fed. 977.

▮ The evidence fails to establish a case of misrepresentation so as to deceive the public, and the title is so completely different in words and in actual appearance, that the injunction against the use of the word "News" should not have been granted. The decree is reversed and the cause remanded with direction to dissolve the injunction.

Reversed and remanded.

CULBERTSON and HOFFMAN, JJ., concur.