**TECHNICAL PUBLISHING COMPANY, DIVISION OF DUN–DONNELLEY PUBLISHING CORPORATION, Plaintiff-Appellant,**

v.

**LEBHAR–FRIEDMAN, INC., Defendant-Appellee.**

No. 83–2012.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1983.

Decided March 20, 1984.

---

James D. Zalewa, Alexander & Zalewa, Ltd., Chicago, Ill., for plaintiff-appellant.

Charles A. Laff, Laff, Whitesel, Conte & Saret, Chicago, Ill., for defendant-appellee.

Before PELL and COFFEY, Circuit Judges, and CAMPBELL, Senior District Judge.[*]

PELL, Circuit Judge.

Plaintiff, Technical Publishing Company (Technical), in an attempt to prevent defendant, Lebhar-Friedman, Inc. (Lebhar), from using the appellation "Computer + Software News" to identify its trade journal, brought suit under the Lanham Act, 15

[*] Senior District Judge William J. Campbell, Northern District of Illinois, is sitting by designation.

U.S.C. § 1125, also alleging pendent state law claims. In addition to permanent relief, plaintiff requested a preliminary injunction preventing defendant from using the phrase "Software News" in its title. The district court considered affidavits and deposition testimony and then found that "the word 'software' is apparently a generic one which cannot be trademarked or otherwise protected under the Lanham Act." The court accordingly found that plaintiff was unlikely to prevail on its claim and denied the preliminary injunction. In a decision not directly involved in this appeal, the court subsequently denied defendant's motion for summary judgment on the basis that plaintiff should be allowed to prove that "Software News" had acquired secondary meaning.

## I. Facts

Plaintiff began publishing "Software News" in May of 1981. "Software News" is a monthly magazine that carries editorials, news articles, and advertisements related to the computer software industry. Plaintiff's publication was originally subtitled "The Computer Software Products Newspaper." In 1982 plaintiff changed this to: "The Newspaper for Software Decision Makers," and then to "Serving Software Decision Makers" in 1983. These changes were intended to reflect the audience to which "Software News" was directed.

"Software News" currently has a national circulation that exceeds 55,000. Most of these copies are given to qualified readers at no charge. The magazine derives most of its revenue from advertisements and the sale of mailing lists and survey results. Plaintiff has never attempted to obtain federal registration for the name "Software News."

Defendant began circulation of "Computer + Software News" in January 1983. "Computer + Software News" is a controlled circulation publication given to retailers of computers and software. As indicated by the subtitle "The Newsweekly For Computer and Software Marketing,"

defendant's publication appears weekly. Unlike "Software News," which does not carry plaintiff's name on the cover, "Computer + Software News" indicates on its cover that it is published by defendant. Other than the use of the words "Software News" there is no similarity between the appearance of the two publications.

There are numerous publications in the computer field, many of them using "software" in their titles and some are in competition with plaintiff and defendant. Applied Data Research published a newsletter titled "Software News" prior to plaintiff's entrance into the field. Although ADR's "Software News" was not in competition with plaintiff, "Datapro Software News," published by McGraw-Hill since 1974, is read by the same type of audience as plaintiff's magazine. Other titles in this crowded field include "Software Times," "Software Digest," "Software Magazine," "Software," "Software Plus," "Software Business Review," "Software Age," "Software Review," "Software Retailing," "Software Journal," and "Systems & Software." We can scarcely characterize "Software News" as an oriflamme.

## II. Standard of Review

█ The decision to grant or deny a preliminary injunction is vested in the sound discretion of the district court, and our review of that decision is necessarily limited. *Dos Santos v. Columbus-Cuneo-Cabrini Medical Center*, 684 F.2d 1346, 1349 (7th Cir.1982); *American Hospital Association v. Harris*, 625 F.2d 1328 (7th Cir.1980). In determining whether a preliminary injunction is appropriate the district court must consider four factors: (1) whether the plaintiff has an adequate remedy at law or will be irreparably harmed if the injunction is not granted; (2) whether the injury threatened to plaintiff outweighs the harm defendant will suffer if the injunction is granted; (3) whether plaintiff has a reasonable likelihood of success on the merits; and (4) whether granting the injunction will disserve the public interest. *Dos Santos*, 684 F.2d at 1349; *American*

*Hospital Association,* 625 F.2d at 1330–31; *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200 (2d Cir. 1979). Plaintiff bears the burden of establishing that each of these factors supports granting the injunction. *Dos Santos,* 684 F.2d at 1349.

■ The district court here found that plaintiff was not entitled to trademark protection because "software" is "apparently" generic. The court concluded that plaintiff failed to demonstrate a likelihood of success on the merits, and in fact that plaintiff had failed even to address the issue of whether the mark was generic. The court's finding, based upon procedures that are less formal and evidence that is less complete than in a full trial, is not equivalent to a judgment on the merits. A factual finding made in connection with a preliminary injunction is not binding on the court in the trial on the merits, *University of Texas v. Camenisch,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981), and the seeming inconsistency in this case between the denial of the injunction and the denial of defendant's motion for summary judgment does not by itself indicate any error in the denial of the preliminary injunction request. Accordingly, we will concern ourselves here with the question whether the court's finding that plaintiff failed to prove a likelihood of success was an abuse of discretion.

### III. Genericness

■ The purpose of a trademark is to designate the source of a product. Traditionally, trademark law has categorized marks by their effectiveness in accomplishing this goal. *Miller Brewing Company v. G. Heileman Brewing Co.,* 561 F.2d 75, 79 (7th Cir.1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978); *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976). At one end of the spectrum are marks that are fanciful or arbitrary, and which are accorded full trademark protection. Marks that merely suggest a quality of the product, but which require some imagination to determine the nature of the product, are also fully protected, but are subject to the claim that they are merely descriptive of the goods. A mark that is merely descriptive of the goods will only serve as a protectable trademark if the proponent of the mark can establish that the mark has developed a secondary meaning linking the product with its source in the mind of the consuming public. Last, and least, is the generic mark, which is no more than the common descriptive term for the goods. A generic term, by definition, is incapable of designating the source of a product and may never be protected as a trademark. *Gimix, Inc. v. JS & A Group, Inc.,* 699 F.2d 901 (7th Cir.1983); *CES Publishing Corp. v. St. Regis Publications, Inc.,* 531 F.2d 11, 15 (2d Cir.1975). To allow a producer of goods to usurp a generic term as a protectable trademark would prevent competitors from describing their own goods adequately. Thus, even when a generic term has developed a secondary meaning it is unprotectable as a trademark. *Miller Brewing Co. v. Falstaff Corp.,* 655 F.2d 5, 8 (1st Cir.1981); *CES Publishing Corp.,* 531 F.2d at 13.

Plaintiff, as claimant to protection for an unregistered mark, bears the burden of proving that "Software News" is not generic. *National Conference of Bar Examiners v. Multistate Legal Studies, Inc.,* 692 F.2d 478, 488 (7th Cir.1982); *Reese Publishing Co. v. Hampton International Communications, Inc.,* 620 F.2d 7, 11 (2d Cir.1980). Plaintiff is not aided in this task by defendant's attempt to register "Computer + Software News" as a federal trademark. *Gimix, Inc.,* 699 F.2d at 905 n. 3.

■ The district court in denying the preliminary injunction determined only that the word "software," in and of itself, is generic, presumably because it is the common descriptive term for programs, procedures, and related documentation associated with a computer system. *See Webster's Collegiate Dictionary,* 1104 (1975). As plaintiff correctly points out, this analysis was in error. Plaintiff's mark is "Software

News," not "Software." The proper analysis considers plaintiff's mark as a whole. *Reese Publishing Co.*, 620 F.2d at 11. The issue, when properly framed, is whether "Software News" is generic when applied to a magazine dealing with the software industry.

A generic term is one that serves as the common descriptive name of the product. The test in determining whether a magazine title is generic is no different than that applied in determining whether any other mark is generic. Magazines differ from other goods, however, in that their title is a primary means of conveying their content. The result is that many magazine titles fall near the line between generic and descriptive marks. In recognition of this "[c]ourts have been reluctant to find a magazine title generic, perhaps in part because the magazines in such cases were not literally the class title designated but were *about* that class." *CES Publishing Corp.*, 531 F.2d at 14 (emphasis in original). An example of this was presented in *American Association for Advancement of Science v. Hearst Corp.*, 498 F.Supp. 244 (D.D.C. 1980), in which the publisher of "Science" magazine sought to prevent defendant from publishing "Science Digest" with a cover design that made defendant's magazine appear to be titled "Science." The court rejected the claim that "Science" was a generic title because "neither [plaintiff's] product nor any class of magazines constitute science. 'Science' refers to bodies of knowledge. The product is 'magazine.' Simply characterized, plaintiff's mark is not generic, but descriptive." *Id.* at 255. The court ordered defendant to redesign its cover so that "Digest" was more prominent.

Assuming that *CES Publishing* was correctly decided on the point, the case before us might be different if both plaintiff and defendant were publishing magazines simply titled "Software" although as we have earlier observed ordinarily "software" without more would be generic. Such is not the case here. Plaintiff's magazine is titled "Software News," which appears to be a common descriptive term for a publication about the software industry. In this respect plaintiff's publication is more closely analogous to "Consumer Electronics Monthly," which was held to be generic in *CES Publishing Corp.*, 531 F.2d at 15, than it is to "Science." In holding that "Consumer Electronics Monthly" was not entitled to trademark protection the court observed that:

> [P]laintiff presents a paradigm for which generic classification of periodical titles is required: it is hard to think of a name for a magazine, directed deliberately and effectively to industry personnel, which more accurately names the class of trade magazines within that industry than one which simply gives itself the name of the trade plus the word "Monthly." ... It would be difficult indeed for other trade magazines to flourish and identify themselves to a relevant readership if they were forbidden to use the common name of the trade in their titles.

531 F.2d at 14–15.

Courts confronted with similar trade journal disputes have held consistently that titles consisting of the trade name and an indication of the type of publication are generic. *Reese Publishing Co. v. Hampton International Communications, Inc.*, 620 F.2d 7 (2d Cir.1980) ("Video Buyer's Guide" is generic); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir.1976) ("Safariland Newsletter" is generic); *Walker-Davis Publications, Inc. v. Penton/IPC, Inc.*, 509 F.Supp. 430 (E.D. Pa.1981) ("Energy Management" as name for trade journal is generic). But compare *CES Publishing, supra*, where plaintiff's mark "Science" was held to be descriptive. For the present purposes, therefore, we do not regard the addition of "News" to "Software" as making a stronger case. "News" by its very name connotes a publication relating information about people or happenings. We have found only one case in which a publisher sought to exclude another from using the word "News" in a title. In rejecting this claim the court noted that the paucity of case law was due to the fact that the proposition "seems such an ab-

surdity on its face that the courts have not even been bothered with [it]." *Belleville News-Democrat, Inc. v. St. Clair County Publishers, Inc.*, 26 Ill.App.2d 95, 98, 167 N.E.2d 573, 575 (1960).

Nor do we find *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901 (7th Cir.1983), applicable to the trademark claim. In that case, this court observed that two terms, each arguably generic when applied to a particular object, did not produce a generic term when combined to form a term with an "abundance of meaning" that each party used to designate a different product. *Id.* at 906. "Software News" possesses no such abundance of meaning. It clearly denotes an information source concerning computer software. Plaintiff, and many others, have used the term "software" as a generic description of programs and related documents used in a computer system. The word "news," when coupled with "software," indicates current information about software. Plaintiff is not the only, nor the first, publisher in this field to use this phrase to describe an information source about the software industry. Plaintiff may not prevent defendant from using this phrase simply because there are other titles defendant could use. The generic quality of "Software News" is not lessened by the availability of other titles, some of which are also generic and some of which are protected trademarks. To accept plaintiff's argument on this point would be to extend protection to a generic term, a result clearly at odds with trademark law. Consequently, we cannot say on the trademark claim which has been the focus of our attention thus far that there was an abuse of discretion in denying a preliminary injunction. The district court, before whom further proceedings will occur and a record developed more fully, has already, the parties agree, denied the defendant's motion for summary judgment. If, as we have indicated, there is nothing more brought forward to demonstrate that "Software News," even though a combination, nevertheless has not emerged from a continuing status of being generic, then the reasons advanced by the district judge for denial of

summary judgment would seem incorrect. In so doing the court relying on *Gimix, supra,* referred to a genuine issue of material fact arising out of secondary meaning in the minds of the public and to evidence of confusion.

But as we have previously stated herein, even if a generic term has developed a secondary meaning, it is unprotectable as a trademark. The Second Circuit referred in this respect to the "common mistake of failing to distinguish between 'merely descriptive' terms which can be rescued as trademarks by [proof of secondary meaning] and generic terms which cannot be." *CES Publishing Corp.*, 531 F.2d at 15. It might well seem further pursuit by the district court of a secondary meaning would be an exercise in futility in view of that which we have expressed regarding the generic nature of "Software News" both singly and collectively. Nevertheless, we have noted a suggestion occurring from time to time in the cases which might make confusion in the minds of the public a basis for a violation of the Lanham Act. It was under that Act that plaintiff instituted this litigation. The Lanham Act in part reads as follows:

> (a) Any person who shall ... use in connection with any goods or services, ... a false description of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, ... shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

A broader reading of the Act beyond a confinement merely to trademarks is set forth in *Ames Publishing Co. v. Walker-Davis Publications, Inc.*, 372 F.Supp. 1, 11 (E.D.Pa.1974).

> While the intent of the Lanham Act is to regulate commerce by making actionable

the deceptive and misleading use of trademarks, it is also designed '... to protect persons engaged in such [interstate] commerce against unfair competition ...' 15 U.S.C. § 1127, and accordingly the scope of Section 43(a) extends beyond the protection of trademarks.

On the other hand, we note that another district judge said flatly that "[U]nder no circumstances" is a generic term susceptible of *de jure* protection under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or under the law of unfair competition. *Miller Brewing Co., supra,* 655 F.2d at 7. This was written by Judge Wyzanski sitting with the First Circuit who relied upon a rationale of the statement in two Second Circuit cases written by Judge Friendly. In these cases, one of which was *CES Publishing Corp.,* the clear reference is to trademark protection for generic terms.

A later case in the First Circuit, written by Judge Campbell, was *Pignons S.A. de Mecanique v. Polaroid Corp.,* 657 F.2d 482 (1st Cir.1981), in which the plaintiff in its second count claimed that the defendant's use of a mark "Alpha" constituted unfair competition in violation of Section 43(a) on the basis that the use of the mark carried the likelihood that purchasers would be confused as to the true source of defendant's cameras. In a supplemental complaint, the plaintiff added to its claim of unfair competition a number of allegations accusing the defendant of falsely representing the color and quality obtainable with its film. The district court had granted summary judgment on the basis that there was no showing of likelihood of confusion. On appeal, plaintiff argued that the district court construed Section 43(a) too restrictively in requiring a showing of likelihood of confusion to support its supplemental unfair competition claim. The court held that the district court was clearly correct in requiring plaintiff to support its unfair competition charge by showing a likelihood of confusion.

On the basis of the slim record before us we are unable to say that the public might not be confused by the appearance of a second publication so like the first one that purchasers could not be certain which they were buying. In that event, conceivably there might be a proper application of the Lanham Act. Certainly the plain language of the Act would seem to support such a proposition. We do not think that the now defunct Chicago Daily News, a longtime publication in Cook County, Illinois, would not have had a meritorious claim under the Act if another publication with similar content directed to the same reading public with a substantially identical format had appeared on the scene belatedly. Having said this, mindful that all that is before us is whether the district court properly denied its preliminary injunction, which we think it did on the basis of the record before it, the plaintiff still has the not inconsiderable burden of proof of such confusion and identities to bring it within the ambit of the Act. Indeed, the defendant in the present case devoted a portion of its brief here to the absence of any likelihood of confusion by the two publications.

For the reasons stated herein, the judgment of the district court denying a preliminary injunction is AFFIRMED.