Kawther AL–ABOOD Plaintiff,

v.

Nimat Mohammed Tayeb EL– SHAMARI et al., Defendants.

No. CIV.A. 98–896–A.

United States District Court, E.D. Virginia, Alexandria Division.

Sept. 20, 1999.

Scott Michael Bohannon, Griffith Lowell Green, Sidley & Austin, Washington, D.C., Matthew A. Wartel, Alexandria, VA, for Plaintiff.

Dane Hal Butswinkas, Williams & Connolly, Washington, D.C., David Jeffrey Ervin, Miles & Stockbridge, McLean, VA, Jonathan Michael Stern, Gordon Samuel Woodward, Schnader Harrison Segal & Lewis, Washington, D.C., for Defendant.

## MEMORANDUM OPINION AND ORDER

LEE, District Judge.

THIS MATTER comes before the Court on Plaintiff Kawther Al-Abood's ("Al-Abood") Motion for Preliminary Injunction. Plaintiff's motion requests expenditure limitations and the prevention of future property transfers by Defendants Nimat El-Shamari ("N.El-Shamari") and Hisham El-Shamari ("H.El-Shamari"). In doing so, the motion seeks facilitation and enforcement of the $2,655,000.00 judgment entered in this Court against Defendants on May 5, 1999. The issue presented is whether, pursuant to Federal Rule of Civil Procedure ("FRCP") 65(a), this Court should issue a post-judgment preliminary injunction to enjoin disposition of Defendants' assets, where significant risk exists that insufficient assets will be available for execution of judgment.

For the reasons stated below, the Court denies Plaintiff's Motion for Preliminary Injunction

## I. Background

Plaintiff Al-Abood filed her original complaint against Defendants N. El-Shamari and H. El-Shamari on June 25, 1998. She amended her complaint on September 1, 1998. Essentially, plaintiff alleged that she was defrauded by Defendants in three ways: (1) Defendants induced her to make investments in various real estate enterprises beginning in 1987 and then took the proceeds and profits from the investments through various false representations and other malfeasance; (2) Defendants induced Plaintiff to place almost $250,000 under their management in a Schwab brokerage account and then absconded with those funds from 1996 to 1998; and (3) Defendants caused Plaintiff to make charitable donations to poor students in the U.S. and then converted those gifts to Defendants' own use from 1991 to 1998.

On November 9, 1998, Defendants filed an answer to the complaint as well as counterclaims for breach of contract, breach of fiduciary duty, conversion, fraudulent concealment, an accounting, and unpaid expenses. The counterclaims were based on Plaintiff's alleged breach of her obligations as trustee for Defendant N. El-Shamari and her late husband.[1] Defendants allege that, in 1987, Defendant N. El-Shamari and her husband entrusted their life savings of approximately $2.5 million to Plaintiff as trustee and placed the funds in a Monaco bank account. According to Defendants, in the summer of 1993, Plaintiff informed Defendant N. El-Shamari that Plaintiff had spent the funds for her personal benefit. Since 1993, Plaintiff has made at least one partial payment to fulfill the debt and allegedly has promised to repay the remainder. Defendants made a written demand for the funds in March 1997 and filed suit against Plaintiff in Monaco in December 1997. On January 8, 1999, this Court granted

---

1. The other Defendant, H. El-Shamari, is the son of Defendant N. El-Shamari and her late husband.

Plaintiff's motion to dismiss all the counterclaims except for the unpaid expenses action. The claims were dismissed as untimely.

Trial commenced on April 19, 1999 and, on May 5, 1999, the jury returned a verdict in favor of Plaintiff Al–Abood, awarding $1,955,000.00 in compensatory damages and $4,317,500.00 in punitive damages.[2] On post-trial motions, the Court sustained the jury's award for $1,955,000.00 in compensatory damages. The Court did, however, reduce the punitive damages award from $4,317,500.00 to $700,000.00—$350,000.00 for each defendant.[3]

In rendering their verdict, the jury made the following findings of fact: (1) Defendants N. El–Shamari and H. El–Shamari had defrauded Plaintiff of the money intended for investment in a Charles Schwab brokerage account; (2) Defendants N. El–Shamari and H. El–Shamari had defrauded Plaintiff of the money intended for investment in real estate; (3) Defendant N. El–Shamari defrauded Plaintiff of charity fund payments intended for Dr. Hanaa Zainal; (4) Defendants N. El–Shamari and H. El–Shamari breached their fiduciary duties to Plaintiff with respect to her investment funds; and (5) Defendants N. El–Shamari and H. El–Shamari converted Plaintiff's funds for their own personal use.

In the present Motion for Preliminary Injunction, Plaintiff alleges that, before, during, and since trial, Defendants have conveyed security interests in and/or directly transferred substantially all of their assets to family members and "related" companies. More specifically, Plaintiff claims that Defendants have conveyed security interests in all their real property in Virginia, and conveyed a substantial portion of their personal property to Nezhet Tayeb, brother of Defendant N. El–Shamari and uncle of Defendant H. El–Shamari. According to Plaintiff, the aforementioned activity is part of Defendants' design to avoid execution of the judgment awarded to Plaintiff on May 5, 1999.

Additionally, Plaintiff submits that N. El–Shamari has made the following questionable cash payments to further avoid execution: (1) $135,000.00 in cash "gifts" to her daughter Nadia El–Shamari and son Mohammed El–Shamari; (2) $10,000.00 "loan repayment" to Nadia El–Shamari; and (3) two other "loan repayments" to Eastgate, LLC, totaling $340,000.00.[4] In total, these cash payments amount to almost $500,000.00 that Plaintiff contends would otherwise have been available to satisfy the monetary judgment.

Plaintiff argues that, when measured in the aggregate, the several financial transactions in question merit preliminary injunctive relief against the Defendants pursuant to FRCP 65(a). In sum, Plaintiff prays that the Court enjoin Defendants from further transferring or encumbering any real or personal property without notice to, or consent of, this Court—pending resolution of Plaintiff's Motion to Void Fraudulent Conveyances.

Defendants deny that any of the financial transactions cited by Plaintiff were designed to elude execution of the May 5, 1999 judgment. Defendants assert that they did not make any transfers or conveyances with the intent to either avoid execution or delay, hinder, or defraud creditors. Furthermore, Defendants argue that Plaintiff has neither taken adequate action to execute judgment by providing facts to demonstrate the total value of Defendants' financial assets, nor subjected Defendants' personal property, income, and business interests to applicable creditor processes.[5]

---

2. The total jury award amounted to $6,272,500.00.

3. The total award after the Court's adjustments was $2,655,000.00

4. Eastgate, LLC, is owned half by N. El–Shimari and half by her brother, Nezhet Tayeb.

5. Discussion of the adequacy of a remedy at law is critical to this Court's analysis of Plain-

## II. Standard for Preliminary Injunctive Relief Pursuant to FRCP 65(a)

■ A preliminary injunction is extraordinary relief, to be granted only if no adequate remedy at law exists, and the moving party clearly establishes the requisite entitlement. *See Federal Leasing, Inc. v. Underwriters at Lloyd's,* 650 F.2d 495, 499 (4th Cir.1981). In the Fourth Circuit, determining whether to grant a preliminary injunction requires the court's consideration of four factors: (1) the likelihood or irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. *See Blackwelder Furniture Co. v. Seilig Manufacturing Co., Inc.,* 550 F.2d 189, 195–96 (4th Cir.1977); *Direx Israel, Ltd. v. Breakthrough Medical Corp.,* 952 F.2d 802, 812 (4th Cir.1991). The plaintiff bears the burden of establishing that each of these factors supports granting the injunction. *See Direx Israel,* 952 F.2d at 812 (quoting *Technical Publishing Co. v. Lebhar–Friedman, Inc.,* 729 F.2d 1136, 1139 (7th Cir.1984)).

■ Not all of the factors outlined above, however, are weighted equally. The most important determination is "[t]he 'balance of hardships' reached by comparing the relevant harms [of issuing the injunction] to the plaintiff and defendant." *Hughes Network Systems, Inc. v. InterDigital Communications Corp.,* 17 F.3d 691, 693 (4th Cir.1994) (citing *Rum Creek Coal Sales, Inc. v. Caperton,* 926 F.2d 353, 359 (4th Cir.1991)). In addition, while the *Blackwelder* factors serve as a competent guide for the district court, the ultimate decision to grant or deny relief lies within that court's sound discretion and will not be set aside absent an abuse of discretion. *See id.* at 693 (citing *Rum Creek,* 926 F.2d at 358).

tiff's preliminary injunction motion. *See infra*

## III. Analysis

By requiring a district court to cast judgment, while acting on an incomplete record, the preliminary injunction remedy is inherently problematic. *See Hughes Network Systems,* 17 F.3d at 693. Because the court's decision on the motion is an appealable order, *see* 28 U.S.C. § 1292(a)(1), motions for preliminary injunction often lead to repetitive litigation, with significant costs for all parties involved. *See Hughes Network Systems,* 17 F.3d at 694. As a result, the Supreme Court has insisted on the "irreparable harm" threshold in the first factor of the *Blackwelder* test to insure preliminary injunction issuance is justifiable:

> The key word in [the preliminary injunction] consideration is *irreparable.* Mere injuries, however, substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not.enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (emphasis added).

### A. Irreparable Harm

■■ Given this background, the basis of preliminary injunctive relief is, and always has been, irreparable harm. *See id.* at 88, 94 S.Ct. 937. A preliminary injunction simply will not issue without this threshold showing. *See Norlin Corp. v. Rooney, Pace, Inc.,* 744 F.2d 255, 260 (2d Cir.1984). Moreover, the clear showing of irreparable harm proffered by the movant can not be either remote or speculative; it must be both actual and immediate. *See Dan River, Inc. v. Icahn,* 701 F.2d 278, 284 (4th Cir.1983). Even "[t]he 'balance of hardship test' does not negate the requirement that the [movant] show some irrepa-

Part III.A.1.

rable harm." *Rum Creek*, 926 F.2d at 360. The movant's failure to do so allows the court to deny preliminary injunctive relief without further engaging the *Blackwelder* elements. *Cf. Direx Israel*, 952 F.2d at 812.

In *Direx Israel, Ltd v. Breakthrough Medical Corp.*, the plaintiff sought a preliminary injunction to protect its trade secrets and enjoy the benefits of its technology by preventing the defendant from introducing a portable medical device into the marketplace. *See id.* at 804. The district court, in granting the injunction, found that the balance of hardships weighed in favor of plaintiff Direx, and that it appeared Direx had clearly shown a likelihood of success on the merits. *See id.* The Court of Appeals for the Fourth Circuit, however, reversed the district court. *See id.* at 804–05. Circuit Judge Donald Russell noted that the district court itself had recognized that the harm was at least a year—and maybe two or three—removed from the time that the suit was filed. Furthermore, the Customs Service had denied the defendant's right to export its machine, and the FDA had yet to approve of marketing in the United States. *See id.* at 815. The Court cautioned that any harm was "problematic and uncertain" and, under the circumstances, granting the injunction was contrary to the rule requiring a present threat of irreparable harm. *See id.* at 816.

■ In this case, Plaintiff similarly fails to make a clear showing of irreparable harm. Plaintiff contends that, if Defendants convey assets to persons or corporations beyond the jurisdiction of this Court, there is a possibility that their remaining assets will not satisfy the judgment. Furthermore, Plaintiff contends that Defendants have years of experience in transacting business with European banks and a wealthy foreign relative, which enhances their ability to transfer assets beyond the jurisdiction of this Court. Yet, while several of Defendants' transactions do indeed appear suspicious in timing, Plaintiff cites only two significant "improper" financial transfers by N. El–Shamari (May 13, 1999, to Mohammed El–Shamari; and June 8, 1999, to Eastgate LLC), and two significant "improper" transactions by H. El–Shamari (June 29, 1999 recording of security interest in Nuzzo enterprises; and June 29, 1999 recording of security interest in NS–Land, LLC). More importantly, Plaintiff has not shown that Defendants' remaining assets are inadequate to satisfy the judgment.

Accordingly, Plaintiff's contentions do not amount to the actual and imminent irreparable injury standard mandated by the Fourth Circuit *Blackwelder* test.

### 1. Adequacy of Remedy at Law

■ Generally, a preliminary injunction is appropriate only where there exists no adequate remedy at law. *Cf. Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir.1994). The availability of a legal remedy operates as a restraint sufficient to permit a court's discount of suspicions unsupported by hard evidence. *See generally Dan River*, 701 F.2d at 283.

In the instant case, the May 5, 1999 monetary judgment rendered against Defendants remains "live." Defendants have not undertaken any efforts to stay execution of the judgment via writ of supersedeas and, thus, their assets remain vulnerable to collection. As a result, Plaintiff can immediately seek execution in Virginia pursuant to Title 8.01, Chapter 18 of the Virginia Code, which outlines the Commonwealth's post-judgment collection remedies.[6] Insofar as Plaintiff has not yet exhausted all efforts to enforce her judgment in this manner, the Court finds that

---

6. For example, levy, attachment, and garnishment proceedings are post-judgment collection methods available in the Commonwealth.

*See, e.g.,* VA. CODE ANN. § 8.01–511 (Michie 1992) (garnishment).

a showing of irreparable harm fails to exist.

Furthermore, Plaintiff's pending Motion to Void Fraudulent Conveyances is yet to be presented in court. It will be heard on the merits in January 2000. Thus, the aforementioned financial transactions, *see supra* Part I, are potentially voidable—pending the outcome of the motion.

If voided, the assets in question become available to the Plaintiff for collection.[7] This fact lends credence to Defendants' argument that there is no imminent risk at the present time to justify issuance of a preliminary injunction. Moreover, according to Plaintiff, her judgment has been adequately recorded in jurisdictions where Defendants' real property exists. Hence, it is unlikely that, prior to January 2000, Defendants will be able to sell off the land to a bonafide purchaser who would be able to avoid the pending judgment against Defendants.

### 2. Risk of Inadequate Assets to Satisfy Money Judgment

Ordinarily, when a preliminary injunction is sought prior to an award of money damages, and the harm suffered by the movant may be compensated by money damages, courts have refused to find irreparable harm. *See Hughes Network Systems,* 17 F.3d at 694. "[A] party does not normally suffer irreparable harm simply because it has to win a final judgment on the merits to obtain monetary relief." *Id.*

A few circuits, however, have held that irreparable harm *may* exist where damages may not be obtainable from the non-movant because he could become insolvent before a final judgment can be collected. *See Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 386 (7th Cir.1984); *see also Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 206 (3d Cir.1990) (explaining that "the unsatisfiability of a money judgment can constitute irreparable in-

jury"); Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 53 (1st Cir.1986) (stating that a "preliminary injunction can be granted when it is necessary to protect the damages remedy").

Yet, according to the Fourth Circuit, these particular situations are to be narrowly construed, "reflecting instances where the harm suffered by the [movant] from denying the injunction is especially high in comparison to the harm suffered by the [non-movant] from granting it." *See Hughes Network Systems,* 17 F.3d at 694. Moreover, such preliminary injunctions are appropriate only if carefully tailored, *see id.,* and where the non-movant is, for example, insolvent, with its assets in danger of dissolution and depletion. *See United States ex rel. Taxpayers Against Fraud v. Singer Co.,* 889 F.2d 1327, 1330 (4th Cir.1989).

Admittedly, most of the Fourth Circuit precedent involving whether the unsatisfiability of money damages rises to the level of irreparable harm involves preliminary injunctions sought *prior to* judgment. The present motion involves a post-judgment preliminary injunction. Nevertheless, the law utilized in the pre-judgment cases is directly applicable here; and given this body of law, the Court is not persuaded that the preliminary injunction should be granted in favor of Plaintiff Al–Abood.

Plaintiff has supplied evidence of questionable financial transactions conducted by Defendants. *See supra* Part I. These transactions appear to have diminished Defendants' overall traceable wealth. Plaintiff has not, however, adequately demonstrated that the transactions in question have rendered Defendants either insolvent or unable to meet their obligations with regard to the jury's award of damages.

Thus, while Plaintiff's concerns are understandable in light of the jury's findings

---

7. The real estate transactions are within the reach of the Court and may be voided if shown to be fraudulent conveyances made

with the intent to hinder, delay, or defraud creditors. *See* Va. Code Ann. § 55–80 (Michie 1995).

regarding Defendants' past fraudulent practices, this Court can not provide preliminary injunctive relief pursuant to FRCP 65(a) without the requisite showing of irreparable harm. On the record as it stands, such a showing has not been adequately demonstrated. Consequently, this Court need not reach the analysis relating to the remaining three *Blackwelder* factors. *Cf. Direx Israel*, 952 F.2d at 812.

### IV. Conclusion

For the reasons set forth above, Plaintiff's Motion for Preliminary Injunction is hereby DENIED.

The Clerk is directed to forward a copy of this Order to counsel of record.